

U.S. Department of Justice

*United States Attorney*
*District of New Jersey*

---

*401 Market Street, 4th Floor*  856-757-5026
*Camden, New Jersey 08102*

March 13, 2025

The Honorable Christine P. O'Hearn
United States District Judge
Mitchell H. Cohen Building & U.S. Courthouse
4th & Cooper Streets
Camden, NJ 08101

  Re: <u>United States v. Zachary Williams</u>, Crim. No. 22-325 (CPO)

Dear Judge O'Hearn:

  The Government writes to provide additional information on the law governing tomorrow's scheduled evidentiary hearing and oral argument on defendant Zachary Williams's motion for a new trial.

I. Timeline of Events and Overview of the Government's Intention to Call the Defendant to Testify for a Limited Purpose at the Evidentiary Hearing

  On the morning of March 7, 2025, the Court scheduled an evidentiary hearing on the Defendant's Rule 33 motion for a new trial, to take place on Friday, March 14, 2025, at 10:00 a.m. *See* ECF Nos. 296-299. That same afternoon (March 7), the Government notified the Court and defense counsel by email that the Government intended to call the defendant Zachary Williams ("Williams") as a witness at the evidentiary hearing, for the limited purpose of questioning him about his understanding of the range of penalties he faced on the counts in the indictment at the time of the second *Faretta* colloquy (June 25, 2024). In the Government's email to counsel and the Court, the Government stated that it did not believe that the proposed limited questioning of Williams would be subject to the protection of the Fifth Amendment. Nevertheless, the Government stated that it would confer with defense counsel to see if he had any objections; if he did, the Government would provide legal authority for its position to the Court.

  The Government followed up with defense counsel on multiple occasions to determine whether counsel objected to the Government calling Williams to testify at the hearing. Specifically, the Government contacted counsel on March 7, March 10, and March 11 to discern counsel's position. On the afternoon of March 11, the Government received a response to its inquiry and learned that counsel would, in

1

fact, object to the Government calling Williams as a witness. The Government subsequently prepared this overview of the governing law in this area.

The Government's request for Williams' testimony was triggered by his motion for a new trial. In that motion, Williams implicitly claims that his waiver of his Sixth Amendment right to counsel was not valid because he was not properly advised of the correct penalties on Count 4 of the Indictment and, therefore, his waiver was not knowing and voluntary. *See* Defendant's Brief, ECF No. 296-1. Given this claim, the Government requests to call Williams as a witness at the evidentiary hearing solely to ask about his understanding of the penalties he faced on the counts in the indictment at the time of the second *Faretta* colloquy. The Government does not intend to ask Williams any questions about the facts of the underlying case, about the facts of the cases pending in the District Courts in Connecticut and the Eastern District of New York, nor any questions about any other events or facts that could lead to any additional charges or sentencing enhancements. The Government simply seeks to make clear on the record Williams' understanding of the range of penalties he faced when he waived his right to counsel, which is the crux of his motion for a new trial. As set forth below, this testimony is permissible and highly appropriate, given the posture of this case and the asserted basis for Williams's motion for a new trial.

II.   The Governing Law on the Government's Proposed Testimony

The law is clear that in order to refuse to answer questions, a witness must make a valid assertion of the Fifth Amendment privilege, and the court must decide the validity of the invocation. *See Pillsbury Co. v. Conboy*, 459 U.S. 248 (1983); *In Re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983) (*citing Hoffman v. United States*, 341 U.S. 479 (1975)). The Fifth Amendment privilege applies to both testimony that would directly support a criminal conviction and testimony that would furnish "a link in the chain" of evidence needed to prosecute the witness for an offense or even support a sentencing enhancement. *Hoffman*, 341 U.S. at 486; *Mitchell v. United States*, 526 U.S. 314, 326 (1999) (the Fifth Amendment privilege applies to sentencing hearings; however, "where there can be no further incrimination, there is no basis for the assertion of the privilege"). A valid assertion of the privilege only exists where a witness has reasonable cause to believe there is a real danger of incrimination. *Morganroth*, 718 F.2d at 167 (*citing Conboy*, 459 U.S. at 256). The danger of incrimination must be real and not an imaginary, remote or speculative possibility of prosecution. *See United States v. Apfelbaum*, 445 U.S. 115, 128 (1980); *Zicarelli v. New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972); *Rogers v. United States*, 340 U.S. 367, 374-75 (1951).

If the Court determines that the witness is mistaken in his justification for the privilege or is advancing his claim as a "subterfuge," the Court may order the witness to answer the questions. *See Hoffman, supra*, at 486. A blanket assertion of the

privilege is not sufficient, and the privilege cannot be claimed in advance of the questions. "The privilege must be asserted by a witness with respect to particular questions, and in each instance, the Court must determine the propriety of the refusal to testify." *In re Morganroth, supra*, at 167 (*citing Hoffman, supra*, 341 U.S. 486-88).

The Third Circuit has held that where a witness makes a "prima facie" assertion of the privilege, before the witness can be ordered to answer, it must be "perfectly clear that the witness is mistaken" and that the answers "cannot possibly have such tendency to incriminate." *United States v. Morton*, 993 F.3d 198, 203 (3d. Cir. 2021) (citing *United States v. Yurasovich*, 580 F.2d 1212, 1221 (3d. Cir. 1978)); *see Hoffman, supra*, at 488. As the Third Circuit held in *Morton*, where a witness invokes the Fifth Amendment privilege and the Government objects, the District Court needs to determine whether the witness could reasonably believe his testimony could incriminate him in a crime—including by leading to evidence against him—before ordering him to testify. *Morton,* 993 F.3d at 204.

The Government submits that questioning Williams about his understanding of the penalties he faced at the time of his second *Faretta* colloquy does not put him at any risk of incriminating himself on any of the charges filed in this case, in his other pending federal cases, or even for any other additional criminal conduct. Furthermore, Williams's answers to the Government's questions should not subject him to any greater punishment at his sentencing hearing, as the defendant's truthful answers as to what he did or did not understand about the penalties he faced are irrelevant to the sentencing issues in the case and the Court's review of the sentencing factors in Title 18, United States Code, Section 3553(a).[1]

Based on the limits on assertions of Fifth Amendment privilege set forth above, the Government requests permission to call Williams as a witness at the evidentiary hearing to ask him limited questions about his understanding of the penalties he faced on the indictment at the time of his *Faretta* colloquy. If Williams asserts the

---

[1] Additionally, courts have long recognized that testimony necessary to vindicate a Constitutional right, for example, invoking a Fourth Amendment reasonable expectation of privacy, is entitled to limited immunity which would prohibit the Government from using such testimony at a later trial. *United States v. Perry*, 788 F.2d 100, 115 (3d Cir. 1986) ("courts may prevent the use at trial of testimony by a defendant that was necessary for the vindication of a constitutional right"); *United States v. Stearn*, 597 F.3d 540, 551 (3d Cir. 2010); *see Simmons v. United States*, 390 U.S. 377, 393-94 (1968); *cf. United States v. Quinn*, 728 F.3d 243, 255 (3d Cir. 2013) (en banc) (applying same principle to Defendant's Speech and Debate Clause claims); *United States v. Inmon*, 568 F.2d 326, 333 (3d Cir. 1977) (Double Jeopardy Clause). Analogously, the Government has no objection to such an order from the Court prohibiting the Government from using Williams' limited testimony at the hearing on Friday in any future criminal proceeding.

Fifth Amendment and refuses to testify, the Government will ask the Court to determine, as to each question, whether Williams has a reasonable belief that the answer to the question could incriminate him. If the Court determines that Williams' belief is not reasonable with respect to the specific question, Williams should be directed to answer the Government's questions. The questions the Government seeks to ask will be limited in number and scope on this narrow issue and therefore should not unreasonably delay the conclusion of the hearing.

The Government believes Williams' answers to the questions we intend to pose will be highly relevant to the issues in Williams' motion for a new trial and, if permitted, will provide for a more complete factual record on which the Court can decide Williams' motion.

    Respectfully submitted,

    JOHN GIORDANO
    United States Attorney

    */s/ Patrick C. Askin*
    By: PATRICK C. ASKIN
    DIANA VONDRA CARRIG
    Assistant U.S. Attorneys

cc: Mark W. Catanzaro, Esquire (via email)